UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| A.B. and D.B., *individually and as parents of C.B., a disabled minor*, <br><br> *Plaintiffs*, <br><br> vs. <br><br> BROWNSBURG COMMUNITY SCHOOL CORPORATION, <br><br> *Defendant*. | No. 1:20-cv-02487-JMS-MJD |

**ORDER**

Plaintiffs A.B. and D.B. ("the Parents") are the parents of C.B., who suffers from generalized anxiety disorder, depression, and Attention Deficit Hyperactivity Disorder. C.B. attends a school that is part of Defendant Brownsburg Community School Corporation ("the District"). When the District refused to find that C.B. was eligible for special education and related services, the Parents hired counsel to seek those services on his behalf. After settlement discussions and a protracted administrative process, which ultimately resulted in the District stipulating that C.B. was eligible for special education and related services, the Parents filed this lawsuit to recover the attorneys' fees that they expended under the Individuals With Disabilities Education Act, 20 U.S..C. § 1400, et seq. ("the IDEA"). The Parents have now filed a Motion for Summary Judgment on Attorneys' Fees, [Filing No. 46], and the District has filed a Cross-Motion for Summary Judgment, [Filing No. 49]. Both motions are ripe for the Court's consideration.

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence." *Id.* The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those

2

facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The existence of cross-motions for summary judgment does not . . . imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts, different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

## II.
### STATEMENT OF FACTS

**A.  C.B.'s Educational History**

C.B. is a student at a school within the District. [Filing No. 23-2 at 177.] During the 2017-2018 school year, the District found that C.B. was eligible for services under Section 504 of the Rehabilitation Act and developed an Accommodation Plan. [Filing No. 23-2 at 177.] The primary purpose of the Accommodation Plan was to assist C.B. with his anxiety and help him avoid feeling overwhelmed at school. [Filing No. 23-2 at 177.] In August 2018 and August 2019, the District added accommodations and supports to C.B.'s Accommodation Plan. [Filing No. 23-2 at 177.] Up to that point, C.B.'s parents had not requested that C.B. be evaluated for IDEA special education and related services. [Filing No. 23-2 at 178.]

On September 27, 2019, C.B. brought an unspent shotgun shell to school. [Filing No. 24-2 at 387.] The school searched C.B.'s locker and found a crude device in C.B.'s backpack that was made from part of an airsoft gun barrel, a metal pipe, a carved drumstick, and a black elastic rope.

3

[Filing No. 52-2 at 1; Filing No. 52-2 at 4.] The District perceived the device as being capable of discharging the shotgun shell, and C.B. was suspended and recommended for expulsion. [Filing No. 23-2 at 177-78; Filing No. 52-2 at 1.] A Manifestation Determination Conference was held on October 10, 2019 to determine whether C.B.'s disability had caused his behavior. [Filing No. 23-2 at 177-78.] At the Manifestation Determination Conference, the District concluded that the September 27, 2019 incident was not related to C.B.'s disability and C.B. was expelled for the remainder of the 2019-2020 regular school year. [Filing No. 24-2 at 389.]

### B. C.B.'s Parents Seek IDEA Services for C.B.

On October 7, 2019 – three days before the Manifestation Determination Conference took place – the Parents filed a Petition for Due Process Hearing with the Indiana Department of Education in which they asserted that C.B. should have been assessed as eligible for special education services under the IDEA. [Filing No. 23-2 at 198-214.]

### C. The Parents and the District Attempt to Reach a Settlement

On October 23, 2019, the Parents and the District met to see if they could resolve the Parents' Petition for Due Process Hearing, and the District agreed to conduct an education evaluation of C.B. followed by a review of the evaluation by a Case Conference Committee ("CCC") to determine whether C.B. was eligible for an Individualized Education Program ("IEP"). [Filing No. 24-2 at 337.] On November 1, 2019, the Parents filed a Request for Due Process Hearing, which addressed the District's actions since the filing of the October 7, 2019 Petition for Due Process Hearing. [Filing No. 24-1 at 5; Filing No. 24-2 at 386-92.]

Also in November 2019, Dr. Audra Cook conducted an education evaluation of C.B. and the parties met in a November 25, 2019 CCC meeting to review her evaluation and determine whether C.B. was eligible for an IEP. [Filing No. 24-1 at 201-07.] At the CCC meeting, one of

4

the Parents asked that "the school…recognize that [C.B.] has problems with anxiety and ADHD whether that be on an updated [Section] 504 or an IEP and that interventions…be put in place," and "asked what the difference between a 504 and an IEP would be." [Filing No. 24-1 at 206.] An Assistant Principal who was present at the CCC meeting explained the difference between the two. [Filing No. 24-1 at 206.] The CCC concluded that C.B. did not meet the statutory requirements for special education eligibility but that C.B.'s Accommodation Plan would be amended to add a diagnosis of ADHD and provide him with additional disability accommodations. [Filing No. 24-1 at 204.] A meeting was scheduled for December 3, 2019 to update C.B.'s Accommodation Plan and to discuss a behavior intervention plan and safety plan. [Filing No. 24-1 at 206.] After that meeting, an updated Accommodation Plan was created and the District agreed that C.B. could return to school for the start of the second semester rather than continue with his expulsion. [Filing No. 24-1 at 230-34; Filing No. 52-1.]

The parties continued to engage in extensive settlement negotiations regarding the Parents' two Due Process Hearing Requests. [*See* Filing No. 24-1 at 212-327.] By April 23, 2020, the parties had reached several compromises including, among other things, that: (1) C.B. would attend school for the remainder of the current school year under a revised Accommodation Plan that would meet his current needs; and (2) the District would pay for an independent education evaluation conducted by a neutral third party. [Filing No. 24-1 at 283-87; Filing No. 24-1 at 297-302; Filing No. 24-1 at 308-11.] The Parents and the District continued settlement negotiations from April 2020 through mid-July 2020 regarding other requests made by the Parents. [*See, e.g.*, Filing No. 24-2 at 66-72.]

### D. The Independent Hearing Officer Schedules a Hearing

In the meantime, the Independent Hearing Officer ("IHO") scheduled a joint hearing on the Parents' two Due Process Hearing Requests for April 13, 2020. [Filing No. 23-2 at 133-34; Filing No. 24-2 at 312-13.] Subsequently, the COVID-19 pandemic caused a delay and the hearing was re-scheduled for July 20, 2020. [Filing No. 24-2 at 268.]

### E. The District Decides to End the Litigation and Stipulates to the Requested Relief

On July 13, 2020, shortly after receiving a July 10, 2020 letter from the Parents which set forth several new demands, the District decided to end the litigation and the District's counsel emailed the Parents' counsel a draft Settlement Agreement containing the Parents' demanded terms. [Filing No. 24-2 at 165.] In the draft Settlement Agreement, the District offered to pay $10,000 in attorneys' fees to the Parents, rather than the entire amount of fees as the Parents had previously demanded. [Filing No. 24-2 at 73-74.] That same day, the District filed a Stipulation to Due Process Hearing Request Remedies (the "Stipulation"), in which it stipulated to the fact that C.B. was entitled to all of the education-related relief that the parents had requested in the two Due Process Hearing Requests and the July 10, 2020 letter, and that the District would provide the relief. [Filing No. 24-2 at 5-9.]

### F. The Parties' Subsequent Filings and the IHO's Orders

Also on July 13, 2020, the District filed a Motion for Dismissal or Final Decision in which it requested that, in light of the Stipulation, the July 20, 2020 hearing be cancelled and the case be dismissed or final judgment be entered so as to avoid the expense of the hearing. [Filing No. 24-2 at 18-27.] The Parents filed a response to the Motion for Dismissal or Final Decision in which they indicated that they did not object to the IHO entering an order in the Parents' favor, but they also requested that the IHO "make factual findings about matters related to attorneys' fees," and

6

that she find that the District had "protracted [the] matter unnecessarily." [Filing No. 24-1 at 368-74.] The Parents included a proposed order with their response, which stated that they were "the prevailing party" as to the two Due Process Hearing Requests "on all issues delineated by this IHO." [Filing No. 24-1 at 330.]

Subsequently, the parties submitted further motions related to how various aspects of the administrative process should be resolved. [*See, e.g.*, Filing No. 24-1 at 184-99.] On July 16, 2020, the IHO entered an Order denying all pending motions, vacating the July 20, 2020 hearing, and stating:

> In just…the past two weeks, counsel for these two cases have generated over a ream of motions, responses, replies, and exhibits which include 9 months of written communication between the attorneys.  Many of the documents filed over the past four days modified or purported to correct documents previously filed.  This hearing officer is expected to compare these documents, interpret them, and then determine if the parties have, in fact, reached an agreement for this hearing officer to reduce to final judgment.  This…hearing officer will not go down that rabbit hole.  The hearing dates will be vacated to give counsel an opportunity to decide among themselves whether or not they agree.  This includes provisions for attorney fees over which this hearing officer has no jurisdiction.  It is hopeful that sending this matter back to the parties for complete resolution will spare them, and the District Court, from continuing acrimony.

[Filing No. 24-1 at 183 (emphasis omitted).]  The IHO noted, among other things:  "The hearing decision deadline in this matter remains August 30, 2020.  No more extensions will be granted.  If not settled before this date, this matter will be dismissed on that date."  [Filing No. 24-1 at 183 (emphasis omitted).]

On July 30, 2020, the IHO issued a Finding of Eligibility and Order to Convene Case Conference Committee, in which she stated:

> This hearing officer has been inundated with various motions, responses, replies, stipulations, objections, corrections, and the like, relating to the dismissal of this case.  This hearing officer has indicated that this matter will be dismissed without prejudice if the parties have not reached an agreement on or before the hearing decision deadline of August 30, 2020.

It is this hearing officer's position that the student has not benefitted from the parties' inability to come to an agreement that is sufficiently clear to reduce to writing. It is assumed that all parties agree with this hearing officer on that point. One bright spot of clarity is that the parties have agreed that the student is eligible for special education under Article 7, at least in the areas of Emotional Disability and Other Health Impairment. This hearing officer has sufficient information before her to concur and adopt that agreement as fact.

With that fact being established, it is essential that the student begin receiving services as soon as possible. The parties have agreed to hold a case conference committee meeting and develop an IEP (which includes, among other things, Related Services and a Functional Behavior Assessment) within 10 days after the parties sign a settlement agreement or the final order of this hearing office. This hearing officer has grave concerns about such a provision.

ITEM 18 set out in the provisions of the Petitioner's [proposed] Findings, Final Decision and Judgment Entry states,

> Respondent shall adopt the recommendations of Dr. Horn, Dr. Cole and Ms. Sanders in the IEP.

This is piggy-backed on ITEM 17 which states,

> In the event there is a disagreement over the IEP, the parent has the right to request a due process hearing on the provisions and services provided in the IEP.

This is far more concerning than a nebulous provision stating, "The CCC shall meet" at some future date. Petitioner is in effect stating, "The CCC shall meet and accept anything and everything the parent or its experts propose, or be prepared for another due process hearing."

In light of the acrimony that has arisen in this case, this hearing officer will not approve such a provision. It is the fervent hope of this hearing officer that upon the completion of the IEP that she is ordering, the list of provisions upon which the parties might disagree will be substantially reduced. IF this should come back to this hearing officer, each provision desired in a Final Order shall be distinctly stated. This hearing officer will not accept generalized agreements such as, "We agree to everything the Petitioner has requested," nor "We agree to Petitioner's remedies as set out [in some other document].["]

THEREFORE,

It is found to be a fact that the Student had an Emotional Disability and Other Health Impairment as defined under Article 7.

> As a matter of law, the Student is entitled to Special Education Services.
>
> It is therefore ordered:
>
> 1. The parties shall convene a [CCC] meeting on or before Friday, August 14, 2020 for the purpose of preparing an IEP for the Student.
>
> 2. Respondent shall pay the fees of ONE expert of Petitioner's choosing to attend that meeting.
>
> 3. The Student shall begin receiving services as soon as appropriate arrangements can be made to implement that IEP, but in no event, later than August 26, 2020.

[Filing No. 24-1 at 65-66 (emphasis omitted).]

The CCC ordered by the IHO took place on August 6, 2020, and the parties subsequently exchanged correspondence regarding revisions to the IEP. [Filing No. 24-1 at 31-32; Filing No. 24-1 at 38; Filing No. 24-1 at 51-58.] The Parents then filed a Motion for Prehearing Conference to Resolve Pending Issues on August 27, 2021, noting that there were "still a number of outstanding pending and unresolved issues pending in this case that [the Parents] would like to address." [Filing No. 24-1 at 36-37.] The District filed a response, arguing that the Parents' counsel had not advised the District's counsel of any outstanding issues, [Filing No. 24-1 at 31], and the IHO issued an Order on August 28, 2020 denying the Parents' motion and stating:

> Counsel has filed Petitioner's Motion for a Prehearing Conference to Resolve Pending Issues. This hearing officer has advised the parties in a prior order that she would not be inclined to address any further motions from the parties other than one for dismissal. Despite that advisement, Counsel has filed a motion for a prehearing conference when there is not, nor will there be, a hearing scheduled in this matter. She does not identify the "pending matters" to be resolved nor why they merit any attention from this hearing officer on the eve of the hearing decision deadline on Sunday, August 30, 2020. Opposing counsel has filed Respondent's Response to Petitioner's Motion for Prehearing Conference to Resolve Issues which suggests there is (yet another) dispute over [IEP] terms.
>
> On July 30, 2020, this hearing officer issued her Finding of Eligibility and Order to Convene Case Conference Committee. The deadline for the committee to meet was

> August 14, 2020 and Respondent was ordered to begin providing services on or before August 26, 2020. The parties met on August 6 and Counsel for Respondent reported that the student's [IEP] was prepared and communicated to Petitioner on August 18. Evidently Petitioner waited 8 days, the date on which Respondent was ordered to begin providing services, to request changes, all but one of which Respondent accepted.
>
> It appears that Petitioner is requesting this hearing officer to make some judgment regarding the [IEP] changes she has requested of Respondent. This hearing officer has had to review prior communications between the parties regarding settlement. It appears to her that this is another attempt by Petitioner to extract last-minute concessions from Respondent. This hearing officer has refused and continues to refuse to make a final ruling as to what is appropriate for the student that is not based on actual evidence. If Petitioner does not believe the [IEP] to be appropriate, she is free to request a due process hearing on that issue.

[Filing No. 24-1 at 30 (emphasis omitted).]

Subsequently, the Parents filed a Motion for Correction of Date and Response to Respondent's Clarification, [Filing No. 24-1 at 9-15], but the IHO never ruled on that motion, [*see* Filing No. 24-1 at 2].

### G. The IHO Dismisses the Parents' Due Process Hearing Requests

On August 30, 2020, the IHO dismissed the Parents' Due Process Hearing Requests. [Filing No. 24-1 at 6-8.] The IHO stated, in relevant part:

> Information contained in the filing tsunami…made it sufficiently clear that the parties had agreed to find the student eligible for services. There being no reason to delay services, this IHO issued a finding of eligibility, an order to convene a case conference committee meeting to develop an IEP, and for the [District] to begin providing services no later than August 26.
>
> The information provided to this hearing officer is sufficient to indicate that the parties have resolved all child-specific issues with sufficient [clarity] for the [District] to proceed with providing services pursuant to the student's [IEP] as it stands at this date.

[Filing No. 24-1 at 7.] The IHO noted that the parties' filings in the administrative process "[c]onsist[ed] of more than a ream of paper." [Filing No. 24-1 at 7.]

10

### H.     The Lawsuit

The Parents initiated this lawsuit on September 25, 2020, alleging that they were the prevailing party in the administrative process and setting forth: (1) a claim under the IDEA for the attorneys' fees they incurred during the administrative process; and (2) a claim that the District violated the IDEA by not responding to an August 28, 2020 request that C.B.'s IEP be amended. [Filing No. 1 at 9-12.]  The Parents then moved for summary judgment only on the attorneys' fee issue, [Filing No. 46], and the District filed a Cross-Motion for Summary Judgment on the attorneys' fee issue and on the Parents' claim related to the District's alleged failure to respond to the August 28, 2020 request for an amendment to the IEP, [Filing No. 49].  In their response to the District's Cross-Motion for Summary Judgment, the Parents abandoned their claim related to amendments to the IEP, noting "[t]o the extent Plaintiff's Complaint states a claim for relief other than attorneys' fees and interest, Plaintiff[s] waive[] that claim."   [Filing No. 57 at 19.] Accordingly, only the attorneys' fee issue remains for the Court's consideration.

### III.
### DISCUSSION

In support of their Motion for Summary Judgment, the Parents argue that they were the prevailing parties in the administrative proceeding and that "[w]hile the parties engaged in a tortured course of settlement discussions during the pendency of this matter, at no time did [the parties] enter into an agreement that C.B. was qualified for services under the IDEA." [Filing No. 48 at 10.]  They note that "[i]t was not until the IHO entered the finding of eligibility that C.B. was assured of receiving services under the IDEA.  This order of the IHO was necessary for Plaintiffs to preserve their right to pursue their attorneys' fees."  [Filing No. 48 at 10.]  The Parents assert that they were the prevailing parties in the administrative proceeding because the IHO's July 30, 2020 Finding of Eligibility was a "judicially sanctioned change in the legal relationship of the

11

parties," and "fostered the purposes of the IDEA in finally finding C.B. eligible for services under the IDEA and forcing [the District] to convene a meeting to create an IEP." [Filing No. 48 at 10.] They note that they "attempted to resolve this matter short of litigation to no avail." [Filing No. 48 at 11.] The Parents further contend that they did not accept the District's offer to find C.B. eligible for benefits under the IDEA because "[a]ccepting it without [the District] agreeing to pay [their] attorneys' fees would have resulted in [the Parents] waiving [their] right to collect those fees under the IDEA." [Filing No. 48 at 11.] They accuse the District of "manipulat[ing] the system...by forcing [the Parents] to incur all the costs associated with fully preparing for the hearing due to commence in four business days and then trying to force a settlement by agreeing to the requested relief except for the fees." [Filing No. 48 at 12.] Finally, the Parents argue that the attorneys' fees they incurred – totaling $64,165.60 – were reasonable and necessary. [Filing No. 48 at 12-16.]

In support of its Cross-Motion for Summary Judgment and in response to the Parents' Motion for Summary Judgment, the District argues that the Parents were not the prevailing parties and that the IHO's July 30, 2020 Finding of Eligibility "was not a ruling or determination on the merits in [the Parents'] favor following a hearing or conference conducted for the purpose of determining whether C.B. was eligible for special education services and, if so, whether a CCC meeting should be conducted, an IEP provided, and [the Parents'] expert fees be paid for by [the District]." [Filing No. 55 at 33 (emphasis omitted).] The District notes that two weeks before the IHO issued the July 30, 2020 Finding of Eligibility, the District had already agreed and voluntarily stipulated to the following: (1) that C.B. was eligible for special education services; (2) that a CCC meeting would occur within 10 days after the parties signed a settlement agreement so that an IEP could be drafted and implemented; (3) that the District would pay for the cost of three of the

12

Parents' experts to attend the CCC meeting; and (4) that the District would satisfy "all other education-related demands made by [the Parents]." [Filing No. 55 at 33-34.] The District points to the July 30, 2020 Finding of Eligibility, in which the IHO noted that the agreement between the Parents and the District that C.B. was eligible for special education services was a "bright spot of clarity," and that she hoped that once the IEP was completed, "the list of provisions upon which the parties might disagree will be substantially reduced." [Filing No. 55 at 35.] The District then sets forth multiple arguments in support of its alternative contention that the majority of the attorneys' fees incurred by the Parents were not reasonable or necessary. [Filing No. 55 at 35-52.]

In their response to the District's Cross-Motion for Summary Judgment and reply in support of their Motion for Summary Judgment, the Parents reiterate their argument that the July 30, 2020 Finding of Eligibility changed the legal relationship between the parties, asserting that "[f]or the first time, C.B. had an enforceable Order requiring [the District] to recognize him as a student with a disability qualified for services under the IDEA, to develop an [IEP] specific to his needs, and to reimburse fees for one of [the] experts." [Filing No. 57 at 8.] The Parents assert that a stipulation requires agreement, and they never agreed to, or accepted, the District's Stipulation. [Filing No. 57 at 9.] They contend that the District's Stipulation should be construed as an offer of settlement that they did not accept, and moreover that the settlement offer was not made more than ten days before the hearing was scheduled, as required by the IDEA in order to make the Parents ineligible to recover their attorneys' fees. [Filing No. 57 at 9-11.] The Parents again argue that all of the attorneys' fees they incurred were reasonable and necessary. [Filing No. 57 at 12-19.]

In its reply in support of its Cross-Motion for Summary Judgment, the District argues that its Stipulation was not an offer or any sort of settlement agreement that required the Parents' acceptance before it could be binding on the District. [Filing No. 58 at 8-9.] The District further

13

asserts that the IDEA's settlement provision is inapplicable in this case because the Stipulation did not require the Parents' agreement to be binding. [Filing No. 58 at 11-12.] The District reiterates many of its arguments regarding why some of the attorneys' fees the Parents incurred were not reasonable or necessary. [Filing No. 58 at 13-22.]

Section 1415 of the IDEA provides that:

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs –

(I) to a prevailing party who is the parent of a child with a disability.

20 U.S.C. § 1415(i)(3)(B)(i)(I).

In 2008, the Seventh Circuit Court of Appeals set forth the circumstances under which attorneys' fees are warranted under § 1415(i)(3)(B)(i)(I) of the IDEA in *Bingham v. New Berlin School Dist.*, 550 F.3d 601 (7th Cir. 2008). There, the parents of a high school student requested that their son's school district provide a special education evaluation, the school district refused, the parents withdrew their son from the school district and enrolled him in a private school, and the parents filed a request for a due process hearing with the Wisconsin Department of Public Instruction. *Id.* at 602. In their due process hearing request, the parents alleged that the district had failed to comply with the IDEA and requested that the district reimburse them for the cost of enrolling their son in a private school. *Id.* A hearing was scheduled, but one month before it was to take place, the district, without admitting liability, issued a check to the parents in the full amount that they had requested. *Id.* The parents accepted the payment but did not withdraw the due process hearing request, and an administrative law judge subsequently determined that no actual existing controversy remained given the school district's payment to the parents. *Id.* The administrative law judge stated "[t]he continuation of these proceedings would have no practical effect on the underlying controversy, so the matter has become moot." *Id.* The parents' counsel

then sent a letter to the administrative law judge noting that "judicial imprimatur is required to obtain attorneys' fees under the IDEA," and requesting that the administrative law judge declare that the parents were the prevailing party. *Id.* The administrative law judge declined to do so. *Id.*

The parents sued the school district in federal court for their attorneys' fees under § 1415, and the district court found that the parents were not the prevailing parties. *Id.* The parents then appealed, asking the Seventh Circuit Court of Appeals to consider the issue. The Seventh Circuit affirmed the district court's decision, noting that the case was not about whether the district had violated the IDEA, but rather was about whether the parents were entitled to attorneys' fees. *Id.* The Seventh Circuit noted that the United States Supreme Court had "rejected the previously widely followed catalyst theory that posits that, for purposes of determining an award of attorneys' fees [under a fee-shifting statute], a plaintiff prevails if he achieves the desired outcome of litigation even if it results from a voluntary change in the defendant's conduct." *Id.* at 603 (citing *Buckhannon Board & Care Home, Inc. v. W. Va. Dept. of Health & Human Resources*, 532 U.S. 598 (2001)); *see also T.D. v. LaGrange Sch. Dist. 102*, 349 F.3d 469, 476-77 (7th Cir. 2003) (finding that Supreme Court's holding in *Buckhannon* applied to the IDEA's attorney-fee provision). The Seventh Circuit explained that "in order to be deemed a prevailing party, there must be a 'material alteration in the legal relationship of the parties' – that is in the form of an enforceable judgment or court-ordered consent decree. It could not be clearer that a voluntary settlement by the defendant – the precise situation presented here – does not entitle a plaintiff to attorneys' fees." *Bingham*, 550 F.3d at 603 (quoting *Buckhannon*, 532 U.S. at 606).

In this case, the parties have spent a great deal of time and paper setting forth every communication and negotiation that led up to the July 30, 2020 Finding of Eligibility and the August 30, 2020 dismissal of the administrative proceeding. But it is the end-result that matters

15

here, and the details leading up to that end-result are largely irrelevant. *Bingham*, 550 F.3d at 603 ("[The entitlement to attorney's fees] does not depend on the facts of a case, but rather only on a simple procedural posture. A court may award attorneys' fees only in those cases where the plaintiff has prevailed by securing a material alteration of the legal relationship between the parties, either, for example, by court ordered consent decree or an enforceable judgment.") The Court has no doubt that both parties could have done a better job at streamlining the administrative process. The District could have decided to consider C.B. eligible for services and agreed to craft his IEP sooner. The Parents could have refrained from adding more demands after the July 30, 2020 Finding of Eligibility. But that is all of no moment to this lawsuit.

The sole question before the Court is whether the Parents secured a material alteration of the legal relationship between the parties. It is plain that they did not. The District filed a Stipulation in which it "agreed to provide every student-related remedy set out in [the Parents'] due process request, as well as any post-filing demand(s)." [Filing No. 24-1 at 28.] The Court rejects the notion that the Parents somehow had to accept that Stipulation for it to become binding on the District. And the IHO's Eligibility Finding and order ultimately dismissing the administrative proceeding simply acknowledged the District's Stipulation but did not require that the District do anything it had not already agreed to do. Additionally, the IHO's various orders indicate her unwillingness to continue overseeing the matter after the parties had agreed that C.B. was entitled to services. *See T.D.*, 349 F.3d at 478 (the mere involvement of a judicial actor in memorializing the parties' agreement is not enough, but rather there must be "some official judicial approval of the settlement and some level of continuing judicial oversight" to confer prevailing party status).

The Court does recognize, and concurs with, the Seventh Circuit's acknowledgment of the potential issues created by applying the *Buckhannon* decision in the IDEA context. As the Seventh Circuit noted in *Bingham*:

> We are aware that there has been substantial criticism of the *Buckhannon* decision, and that the rule it announced falls particularly hard on parents of disabled children litigating under the IDEA. Parents of disabled children are unlikely to have significant financial resources to expend on legal fees and may prefer to spend the resources they do have on private education rather than fighting the school system to provide the services to which they are rightfully entitled. They tend to seek equitable relief that is significant to them or to the community at large where the cost of those services is far lower than the cost of litigating to receive the services. The rule of *Buckhannon*, these scholars offer, points the incentives in the wrong direction. A school district can delay providing expensive educational services as long as possible and hope that the parents either tire of the battle, re-matriculate elsewhere, or that the child ages out of the school system. By doing so they do not risk having to pay the opposing side's attorneys' fees at the end of the protracted battle, provided they capitulate sometime prior to judgment. The situation may require parents to choose between a settlement that provides educational services to their child, but sacrifices recovery of attorneys' fees, or continuing to litigate indefinitely while the child goes without the needed services in place, in an uncertain attempt to become a prevailing party and recover attorneys' fees.

*Bingham*, 550 F.3d at 604. Indeed, that is exactly what happened in this case: The District stipulated to providing services some nine months after the Parents requested the first Due Process Hearing; and the Parents continued to litigate at the administrative level after the District filed its Stipulation – in which it agreed, according to the IHO, to "provide every student-related remedy set out in [the Parents'] due process request, as well as any post-filing demand(s)," [Filing No. 24-1 at 28] – and continued requesting that the IHO impose additional conditions.[1]

So while applying *Buckhannon* in the IDEA context may have produced results in this case that were not what was best for C.B., the Court must adhere to the precedent established by the

---

[1] The Parents are transparent about the motivation behind their "rejection" of the District's Stipulation, noting in one of their briefs that "[a]ccepting [the Stipulation] without [the District] agreeing to pay [their] attorneys' fees would have resulted in [the Parents] waiving [their] right to collect those fees under the IDEA." [Filing No. 48 at 11.]

17

Supreme Court and the Seventh Circuit Court of Appeals. That precedent dictates that the Parents were not the prevailing parties in the administrative proceeding because the District stipulated to the relief they sought and the IHO's actions did not materially alter the legal relationship between the parties. Accordingly, the Court finds that the Parents are not entitled to an award of attorneys' fees under § 1415 of the IDEA.

## IV.
### CONCLUSION

Because *Buckhannon* and *Bingham* have direct application to this case, this Court must follow that precedent. See *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts.") In doing so, however, the Court recognizes that applying *Buckhannon* in the context of the IDEA "is an important debate," but also that "policy arguments of this nature are better directed to a legislative body or to the [appellate court]." *Bingham*, 550 F.3d at 605. For the foregoing reasons, the Court **DENIES** the Parents' Motion for Summary Judgment on Attorneys' Fees, [46], **GRANTS IN PART** the District's Cross-Motion for Summary Judgment as it relates to the attorneys' fee issue, [49], and **DENIES IN PART AS MOOT** the District's Cross-Motion for Summary Judgment as it relates to other relief requested by the Parents, [49]. Final judgment shall enter accordingly.

Date: 2/1/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**